IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| SECURITIES INDUSTRY AND FINANCIAL MARKETS ASSOCIATION, INTERNATIONAL SWAPS AND DERIVATIVES ASSOCIATION, INSTITUTE OF INTERNATIONAL BANKERS,<br><br>   Plaintiffs,<br><br>v.<br><br>COMMODITY FUTURES TRADING COMMISSION,<br><br>   Defendant. | Case No. 13-cv-1916 (ESH) |

**DEFENDANT'S OPPOSITION TO PLAINTIFFS' MOTION FOR EXPEDITED CONSIDERATION OF SUMMARY JUDGMENT**

Defendant, Commodity Futures Trading Commission ("CFTC" or "Commission"), opposes Plaintiffs' motion for expedited consideration of summary judgment ("Pl. Mot. Exp."). Plaintiffs challenge <u>fifteen</u> separate agency issuances, including fourteen regulations, on multiple substantive and procedural grounds. For the reasons set forth in the Commission's motion for abeyance filed December 30, 2013, the proper course, consistent with judicial economy, conservation of public resources, the interests of justice, and fairness to the agency, is to proceed first with a motion to dismiss and, if necessary, any discovery needed on the issue of Plaintiffs' claims of injury. *See* Dkt. No. 13 (filed December 30, 2013) ("Def. Abeyance Mot.").[1] At the very least, a reasonable amount of time is necessary to conduct this litigation.

---

[1] The Commission hereby incorporates those arguments in full in opposition to Plaintiffs' motion to expedite. In light of this motion practice and the need to focus attention on Plaintiffs' motion

As explained below, the schedule proposed by Plaintiffs is inequitable and unjustified. This is particularly so in light of the extraordinary scope of relief that Plaintiffs seek—injunctions of fourteen federal regulations and a CFTC guidance document. If that relief were granted, it would debilitate Congress's and the Commission's efforts to reform the markets in complex derivatives to prevent future crises and further bailouts of institutions exposed to those instruments. As a practical matter, the proposed schedule is impossible if the CFTC is to brief the Court in a responsible fashion. For the reasons that follow, in addition to those set forth in the Commission's motion for abeyance, Plaintiffs' motion to expedite should be denied.

## ARGUMENT

1. The challenged Guidance, rules, and rule preambles cumulatively total over 900 Federal Register pages in their final form.[2] Each of the rules imposes different obligations; and each of these issuances involves unique policy and technical issues and has its own voluminous record and comment file. The records underlying the fifteen issuances include over 5000 comment letters and 400 Federal Register pages of antecedent proposals. Plaintiffs argue, among other things, that all fifteen are arbitrary and capricious, failed to consider properly the costs and benefits, and in most instances failed to respond to comments. To respond in the

---

for summary judgment, the Commission reserves the right, if necessary, to seek a reasonable extension of time to file its forthcoming motion to dismiss.

[2] Cross-Border Policy Statement, 78 Fed. Reg. 45292; Swap Entity Registration Rule, 77 Fed. Reg. 2613; Entity Definition Rule, 77 Fed. Reg. 30596; Portfolio Reconciliation and Documentation Rule, 77 Fed. Reg. 55904; Real-Time Reporting Rule, 77 Fed. Reg. 1182; Daily Trading Records Rule, 77 Fed. Reg. 20128; Trade Execution Rule, 78 Fed. Reg. 33606; Straight Through Processing Rule, 77 Fed. Reg. 21278; Clearing Determination Rule, 77 Fed. Reg. 74284; Chief Compliance Officer Rule, 77 Fed. Reg. 20128, 20200-01; Risk Management Rule, 77 Fed. Reg. 20128, 20205-11; SDR Reporting Rule, 77 Fed. Reg. 2136; Historical SDR Reporting Rule, 77 Fed. Reg. 35200; Large Trader Reporting Rule, 76 Fed. Reg. 43851; and SEF Registration Rule, 78 Fed. Reg. 33476.

context of a motion for summary judgment will be an enormous undertaking.  The CFTC, with its well-publicized resource limitations,[3] cannot do so within the time Plaintiffs suggest.[4]

    2. The task of adjudicating a summary judgment motion as to these fifteen agency issuances would be of similar magnitude.  *See* 5 U.S.C. § 706 (requiring that on review of agency action "the court shall review the whole record or those parts of it cited by a party").  It would also be without precedent, which the Dodd-Frank cases that Plaintiffs cite in their motion to expedite make clear.  Each of those cited cases involved a challenge to one or two rules.  That alone is a dispositive distinction, but there are others.  For example, in *Investment Company Institute v. CFTC*, the CFTC agreed to an expedited schedule because there was an impending deadline.  12-cv-612, Dkt. No. 9 (D.D.C. 2012) ("*ICI*").  There was also an impending deadline in *ISDA v. CFTC*.  There, the plaintiffs (two of the three Plaintiffs here) moved for a preliminary injunction, stating that emergency relief was necessary to prevent "substantial harm to ordinary Americans." 1:11-cv-02146, Dkt. No. 14 at 47 (D.D.C. 2012).  Yet the court in *ISDA* did not grant the preliminary injunction and never ordered that summary judgment be expedited.  Similarly, in *Business Roundtable v. SEC*, the SEC agreed to an expedited schedule because it had previously granted a stay of the relevant rule pending the outcome of the litigation.  10-1305, Doc. No. 1270639 (D.C. Cir. 2010).  Also inapposite are *National Association of Manufacturers v. SEC* and *American Petroleum Institute v. SEC*, because the courts in those cases did not

---

[3] Bloomberg, *CFTC to Furlough Workers after Collecting $1.7 Billion* (October 24, 2013), http://www.bloomberg.com/news/2013-10-24/cftc-plans-up-to-14-day-staff-furlough-in-2014-on-budget-gap-1-.html.

[4] Moreover, the Commission's leadership is in a period of major transition—the Chairman's term ended on January 3, 2014 and the President has nominated a new Chairman and two additional new Commissioners (a majority of the body) to assume the agency's duties—which may affect the internal review and approval process.

establish briefing schedules at all; instead, they resolved summary judgment based on the parties' earlier submissions to the D.C. Circuit.[5]

Here, there are no relevant deadlines. On the other hand, the time and effort that would be required to address these fourteen rules and one guidance document through Plaintiffs' summary judgment motion would be many times greater than in any of these other cases. Yet Plaintiffs ask this Court to give the Commission less time to respond than the Commission otherwise would have had to answer the Complaint. *Compare* Fed. R. Civ. P. 12(a)(2) (giving the CFTC 60 days, or until February 3, 2014, to answer the Complaint), *with* Pl. Mot. at 11 (giving the CFTC until January 31, 2014 to file a response and cross-motion for summary judgment). The CFTC cannot responsibly do so.

3. Nor is there any justification for the relief that Plaintiffs seek. Despite the fact that they have already filed their summary judgment motion, they have offered no evidence that any injury is occurring, much less evidence that requires the Court to rush the adjudication. Indeed, they have not so much as identified an injured party. Rather than provide evidence of specific injury, they rely on *counsel's* boilerplate assertions about costs, international comity, and lack of market clarity. All but one of these assertions of injury lacks any citation at all—and the one exception is a cite to an article on the internet, which a court could not even consider in the context of a motion for summary judgment, *see* Fed. R. Civ. P. 56 (c)(2); *Greer v. Paulson*, 505

---

[5] *See Nat'l Assoc. of Mfrs., et al. v. SEC*, 12-1422, Doc. No. 1406293 (D.C. Cir. 2012) (SEC consented to expedited briefing);13-cv-0635, Dkt. No. 14, 42 (D.D.C. 2013) (scheduling oral argument six weeks after the scheduling order because the briefing was complete); *Am. Petroleum Inst. v. SEC*, 12-1398, Doc. No. 104186 (SEC consented to expedited briefing) (D.C. Cir. 2012); *Am. Petroleum Inst. v. SEC,* 12-cv-1668, Dkt. No. 23, (D.D.C. 2013) (not noting any need for expedited argument and instead stating that oral argument would be held at an unspecified "future date.").

F.3d 1306, (D.C. Cir. 2007) ("'sheer hearsay' … 'counts for nothing' on summary judgment"), much less treat as good cause to grant the additional relief Plaintiffs seek here.[6]

Even in their unsupported assertions, Plaintiffs do not specify costs or explain which are "mounting" because of any recent action by the Commission, as opposed to costs attributable to requirements of the Dodd-Frank Act, including outside of the United States through the operation of the Act's cross-border provision, 7 U.S.C. § 2(i). Complained of costs are also likely attributable to individual overseas firms' own voluntary acts, such as registering as a U.S. swap dealer, which dozens of foreign entities have done.[7] To the extent an overseas entity has voluntarily incurred obligations, no relief can be granted. *See Nat'l Family Planning & Reprod. Health Ass'n v. Gonzales*, 468 F.3d 826, 831 (D.C. Cir. 2006) ("self-inflicted" harm neither constitutes cognizable "injury," nor is "fairly traceable to the defendant's challenged conduct"). Plaintiffs have simply listed CFTC swap regulations, which gives the Court no basis to conclude that any remedy is necessary. Pl. Mot. Exp. at 7-8. As if to drive home the point that they have shown no injury, Plaintiffs assert that a rushed schedule is necessary for the Court to issue "judicial guidance" on agency rulemaking—that is, an advisory opinion. Pl. Mot. Exp. at 9. That is, of course, not the function of federal courts.

4. While Plaintiffs warn that the public will be harmed without immediate judicial intervention, those assertions are repetitive of similar claims in earlier Dodd-Frank cases, and the harms have never come to pass. For example, when the *ICI* case reached the Court of Appeals, the plaintiffs warned that "disruptions of the market" would occur if the district court were not

---

[6] With no evidence of harm, Plaintiffs appear to imply that, due to the size of these market interests, there is something akin to a *per se* rule of expedition in challenges to Dodd-Frank regulations. The suggestion is troubling, and there is no basis to afford litigants challenging Dodd-Frank rules special privileges that are inapplicable to others.
[7] *Provisionally Registered Swap Dealers* (January 6, 2014), http://www.cftc.gov/LawRegulation/DoddFrankAct/registerswapdealer.

quickly reversed.  *ICI*, 12-5413, Document No. 1413282 at 16 (D.C. Cir. 2013).  The district court was affirmed, and financial turmoil did not ensue.  In *Bloomberg, L.P. v. CFTC*, 1:13-cv-00523, Dkt. No. 13 at 52 (D.D.C. 2013), the plaintiff asserted that a preliminary injunction was necessary to prevent a "permanent" "loss in [market] transparency" and preserve market "stability."  The CFTC prevailed, and no such catastrophe occurred.

5. Plaintiffs argue that these rules and guidance undermine "clarity" in these markets, but any "inclarity" that exists at this point results from their own lawsuit and their delay in bringing it, in some cases years after the challenged regulations were adopted.  *See CFTC suit puts non-US firms in limbo*, Financial News (Dec. 6, 2013), http://www.efinancialnews.com/story/2013-12-06/cftc-suit-puts-non-us-firms-in-limbo (stating that the suit has "created confusion" and put market participants in a potential "freeze zone.").  Twelve of the fourteen rules they challenge were issued in 2011 or 2012, and the guidance document at the center of their claims was issued in July, 78 Fed. Reg. 45292.  "Equity demands that those who would challenge the legal sufficiency of administrative decisions … do so with haste and dispatch."  *Quince Orchard Valley Citizens' Ass'n v. Hodel*, 872 F.2d 75, 80 (4th Cir. 1989) (ruling in preliminary injunction context).  This purported need for a rushed adjudication "could have been obviated if Plaintiffs had diligently brought suit."  *Id.*

6. Finally, Plaintiffs cite principles of international comity in support of expedition, but the foreign policy implications of these issues militate in favor of restraint, not haste.  *Flynn v. Schultz*, 748 F.2d 1186, 1190 (7th Cir. 1984) ("the conduct of the foreign relations of our government is committed by the Constitution to the executive and legislative departments . . . what may be done in the exercise of this political power is not subject to judicial inquiry or decisions." (internal quotation marks and citation omitted)).  The Commission is working

"closely with foreign regulators to address potential conflicts," 78 Fed. Reg. at 45297, as Plaintiffs acknowledge through their citation of the Commission's recent substituted compliance determinations.  Pl. Mot. Exp. at 9; *see also, e.g,* Secretary of the Treasury Jacob J. Lew, *Remarks of Secretary Lew at Pew Charitable Trusts* (December 5, 2013), http://www.treasury.gov/press-center/press-releases/Pages/jl2232.aspx (in international negotiations on financial regulation U.S. is "working to align [foreign] approaches with the strong U.S. frameworks….we want a global race to the top").  These circumstances favor caution, not expedited adjudication of matters subject to ongoing international negotiations.

## CONCLUSION

The CFTC would require far more than thirty days to respond conscientiously to Plaintiffs' allegations of substantive and procedural deficiency in fifteen agency issuances including fourteen regulations.  The truncated schedule Plaintiffs propose would prevent the CFTC from providing the Court with a fully developed legal analysis or identifying the most relevant portions of the extensive records.   The Court should, therefore, deny Plaintiffs' motion for expedited summary judgment.  Instead, the Court should hold Plaintiffs' motion for summary judgment in abeyance, or, in the alternative, the Court should grant the CFTC an extension of time to file its response until March 27, 2014.

        Respectfully submitted,

        Jonathan L. Marcus (DC 451172)
          *General Counsel*
        Robert A. Schwartz (DC 489240)
          *Deputy General Counsel*
        Martin B. White (DC 221259)
          *Assistant General Counsel*
        Kavita Kumar Puri (DC 977997)
          *Counsel*

        /s/Martin B. White
        Commodity Futures Trading Commission
        3 Lafayette Centre
        1155 21st Street, N.W.
        Washington, D.C. 20581
        (202) 418-5129
        mwhite@cftc.gov

## CERTIFICATE OF SERVICE

      I hereby certify that on January 8, 2014, I caused this opposition to be served on the following counsel through the Court's CM/ECF system:

Eugene Scalia
escalia@gibsondunn.com
Jason J. Mendro
jmendro@gibsondunn.com
Mithun Mansinghani
mmansinghani@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
Attorneys for Plaintiffs

                              /s/Martin B. White
                              Commodity Futures Trading Commission
                              3 Lafayette Centre
                              1155 21st Street, N.W.
                              Washington, D.C. 20581
                              (202) 418-5129
                              mwhite@cftc.gov